FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL S.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | No.   4:25-cv-5137-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Michael S. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to several conditions, cannot perform any of the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

medium-exertional-level jobs the ALJ found he could perform due to the need to elevate his legs throughout the day, and is entitled to benefits as of his 55th birthday in 2019 pursuant to Medical-Vocational Rule 202.04. Because the ALJ improperly discounted Plaintiff's symptom claims, the ALJ erred. This error affected the ALJ's step-five findings. This matter is remanded for further proceedings, rather than for an award of benefits, as further development of the record is necessary to consider the swelling of Plaintiff's legs.

## I.    Background

Plaintiff's case comes before the Court for a second time. Plaintiff filed his Title 16 application for benefits in October 2017, alleging disability beginning October 4, 2017, due to post traumatic stress disorder, anxiety, depression, joint pain, headaches, back pain, and neuropathy in extremities.[2]

Following a hearing, ALJ Marie Palachuk issued a decision in October 2019 finding Plaintiff not disabled.[3] In her decision, the ALJ

---

[2] Administrative Record (AR) 38, 65, 160–70.

[3] AR 12–31, 35–59.

discussed the medical opinions of: 1) Desmond Tuason, MD, who reviewed the medical records at the reconsideration stage and opined Plaintiff could perform light work; 2) James Opara, MD, who conducted a physical consultative examination and opined Plaintiff could stand and walk two hours in an eight-hour work day and occasionally lift and carry 50 pounds; and 3) Patrick Metoyer, PhD, who conducted a psychological consultative examination and opined Plaintiff had impairments in mental functioning areas.[4] The ALJ rejected Dr. Tuason's exertional limitations as inconsistent with the medical records, rejected Dr. Opara's opinion as internally inconsistent, and found Dr. Metoyer's opinion partially persuasive.[5]

This Court reversed and remanded.[6] The Court found that the ALJ failed to accurately characterize the medical records when finding Dr. Tuason's opinion inconsistent, substantial evidence did not support the consistency analysis, and the ALJ failed to assess the

---

[4] AR 23–24.

[5] AR 24–25.

[6] AR 614–40; E.D. Wash. Case No. 4:20-cv-5196-MKD.

DISPOSITIVE ORDER - 3

supportability of Dr. Tuason's opinion.[7] The Court found that substantial evidence did not support the ALJ's assessment of Dr. Opara's opinion because the ALJ focused on a few normal findings while ignoring relevant abnormal findings.[8] As remand was warranted, the Court did not review challenges regarding other opinions.[9] The Court instructed the ALJ, on remand, to reconsider the supportability and consistency of the medical opinions, incorporate the medical opinions' limitations into the RFC or give reasons supported by substantial evidence to support them, resolve any internal inconsistencies in Dr. Opara's opinion, determine and make a finding whether Sarah Hodge, LPN—who  recommended that Plaintiff elevate his legs due to foot and leg swelling—provided a medical opinion, and reevaluate Plaintiff's alleged symptoms.[10]

---

[7] AR 624–28.

[8] AR 629–32.

[9] AR 632–33.

[10] AR 628, 632–33, 637.

DISPOSITIVE ORDER - 4

On remand, the record was updated and, in August 2024, the ALJ held a new hearing at which Plaintiff and a vocational expert testified.[11]

The ALJ issued a new decision on September 23, 2024, again finding Plaintiff not disabled.[12] The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[13] The ALJ considered the lay statements from Plaintiff's niece inconsistent for the same reasons.[14] As to the medical opinions, the ALJ found:

- the reviewing opinions of Dennis Koukol, MD, and Eugene Kester, MD, unpersuasive.
- the reviewing opinion of Dr. Tuason generally persuasive.
- the reviewing opinion of Mary Koehler, MD, very persuasive.

---

[11] AR 557–84.

[12] AR 527–50. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[13] AR 537–44.

[14] AR 538–39.

DISPOSITIVE ORDER - 5

- the consulting physical-examination opinion of Dr. Opara not persuasive.

- the consulting psychological-examination opinion of Dr. Metoyer somewhat persuasive.

- the testifying opinion of Stephen Rubin, PhD, not persuasive.

- the recommendation of Nurse Hodge to not be a functional opinion, but to the extent it is considered an opinion, not persuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 4, 2017, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease; migraines; congestive heart failure; anxiety disorder; and polysubstance use/abuse.

---

[15] AR 545–48.

DISPOSITIVE ORDER - 6

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with postural activities performed occasionally, except he can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme temperatures and hazards; is able to understand, remember, and carry out simple, routine tasks; can maintain concentration, persistence, and pace for two-hour intervals between regularly scheduled breaks; can adapt to normal changes; cannot work at assembly-line or similar fast pace; and can have superficial interaction with the public and coworkers.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

DISPOSITIVE ORDER - 7

numbers in the national economy, such as church janitor, auto detailer, and scrap sorter/recycling laborer.[16]

Plaintiff timely filed written exceptions to the ALJ's decision to the Appeals Council, which denied review.[17] Plaintiff now appeals to district court.[18]

## II.  Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[19] and such error impacted the nondisability determination.[20] Substantial evidence is

---

[16] AR 532–49.

[17] AR 520–23. *See* 20 C.F.R. §§ 404.981, 422.201.

[18] ECF No. 1.

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[20] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 8

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

### III.  Analysis

Plaintiff argues the ALJ erred by rejecting his subjective complaints, improperly evaluating the medical opinions, and not conducting an adequate analysis at step five. The Commissioner argues the ALJ reasonably discounted Plaintiff's subjective symptoms, reasonably assessed the supportability and consistency of the medical opinions, and made no errors in the step-five analysis. As is explained

---

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

below, the ALJ consequentially erred when she rejected Plaintiff's testimony about swelling in his legs as inconsistent with the record.

**A.    Symptom Reports: Plaintiff establishes error.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22] Plaintiff argues the ALJ failed to provide valid reasons for discounting his symptom reports because the ALJ ignored his inability to afford medical treatment, unreasonably relied on his daily activities, and disregarded the uncontroverted evidence that he must elevate his legs. As is discussed below, the ALJ's reasons for discounting Plaintiff's symptoms are not clear and convincing reasons supported by substantial evidence.

1.    <u>Standard</u>

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to

---

[22] AR 543.

DISPOSITIVE ORDER - 10

determine how they affect the claimant's ability to work.[23] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence; 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[24]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to

---

[23] 20 C.F.R. § 416.929(c).

[24] *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

DISPOSITIVE ORDER - 11

evidence.[25] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[26]

### 2.    Plaintiff's Testimony and Related Records

At his original hearing in October 2019, Plaintiff testified to the following. He spent most of his day with his legs elevated because of his legs hurting and swelling.[27] He was incarcerated at various times since 2017.[28] When he was incarcerated, he was taken off "work crew" because his legs were swelling to the point of making it difficult to walk.[29] His legs swelled when he moved around or stood for more than

---

[25] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[26] *Smartt*, 53 F.4th at 499 (alteration added).

[27] AR 40, 49.

[28] AR 41–42, 46–48.

[29] AR 46.

DISPOSITIVE ORDER - 12

20 minutes.[30] The swelling prevented him from taking showers and he had to wear boots when he slept to prevent swelling.[31] His doctor instructed him in 2018 to elevate his legs above his heart.[32]

At his hearing on remand in August 2024, Plaintiff testified to the following. He was still having problems with his legs swelling.[33] His feet and legs swelled and he kept his legs elevated as much as possible.[34] He spent at least 30% of a typical day with his legs elevated at heart level.[35] Moving around and standing made the swelling worse.[36] His legs would swell after about 10 to 15 minutes of standing,

---

[30] AR 49.

[31] AR 49–50.

[32] AR 50–51.

[33] AR 562.

[34] AR 562–63.

[35] AR 563–64.

[36] AR 564.

DISPOSITIVE ORDER - 13

after which he would have to sit with his legs elevated for 30 minutes until the pain and swelling stopped.[37]

The record contained the following evidence related to swelling of Plaintiff's legs and feet. In October 2018, Plaintiff complained to the nurse at the jail that his legs were swollen, his feet were painful to walk on due to swelling, and he never had swelling of the bilateral lower extremities before.[38] The nurse noted "+1 pitting edema" in Plaintiff's legs and feet, Plaintiff ambulated slowly with an unsteady gait, and the nurse supervisor assessed Plaintiff with "bilateral lower

---

[37] AR 564–65.

[38] AR 375.

DISPOSITIVE ORDER - 14

extremity edema +1."[39] Diuretics were ordered for treatment and he was instructed to elevate his leg.[40]

Plaintiff presented to the emergency department twice in October 2018 with leg swelling and +1 pitting edema.[41]

On January 7, 2019, Plaintiff complained to the nurse at the jail, Nurse Hodge, that his legs were "really swollen" with a "constant burning sensation."[42] Nurse Hodge reported "legs notic[eably] swelling to right front and back of calf. [A]ppears to be fluid filled areas. [Bilateral lower extremities] with pitting edema. [P]edal pulses noted

---

[39] AR 374–76. The severity of pitting edema is graded on a scale of 1 (least severe, immediate rebound of skin with a 2-millimeter pit) to 4 (most severe, rebound of skin within 2 to 3 minutes with a 8-millimeter pit). *Pitting Edema*, Cleveland Clinic, clevelandclinic.org (last viewed April 23, 2026).

[40] AR 374–76.

[41] AR 847, 849, 853, 862–64, 868.

[42] AR 373.

DISPOSITIVE ORDER - 15

bilater[al], both faint."[43] His right calf's diameter was three centimeters greater than his left calf.[44] Nurse Hodge ordered an additional blanket to assist Plaintiff in elevating his legs and encouraged Plaintiff to rest and elevate his legs.[45] Nurse Hodge took pictures of Plaintiff's legs, which showed obvious swelling of Plaintiff's right calf, ankle, and foot.[46]

The next day, Plaintiff complained that his right leg had been swelling for the past two to three months.[47] A nurse practitioner assessed "mild non pitting edema noted to feet bilateral" and "mild swelling to the right lower anterior calf."[48] Nurse Hodge reported that

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] AR 344–49, 373.

[47] AR 371.

[48] AR 372.

DISPOSITIVE ORDER - 16

he was provided two blankets to elevate his legs to treat leg swelling.[49] He was medically cleared to work.[50]

A radiologist reported that medical imaging from January 2019 showed old fracture deformities in Plaintiff's tibia and fibula, soft tissue swelling, osteopenia, and no acute fracture.[51]

Plaintiff presented to the emergency department in October 2020 and was treated for hypertension and new onset type 2 diabetes.[52] He presented to the emergency department in November 2021 for evaluation of right leg swelling.[53] He reported persistent swelling that began two weeks prior, tingling in his toes, and pain from his knee radiating down his leg.[54] The provider assessed tingling of the toes, pain in the right lower extremity, leg swelling, and elevated blood

---

[49] AR 371.

[50] *Id.*

[51] AR 325.

[52] AR 830–38.

[53] AR 817.

[54] *Id.*

DISPOSITIVE ORDER - 17

pressure.[55] He presented to the emergency department twice in January 2024 with hyperglycemia.[56]

### 3. ALJ's Reasons

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his "medically determinable impairments" inconsistent with the objective medical evidence, failure to seek treatment, and non-compliance with prescribed treatment.[57] The ALJ acknowledged Plaintiff's assertion that he had "disabling swelling in the lower extremities requiring him to repeatedly elevate his legs above heart level several times throughout the day."[58] The ALJ discounted Plaintiff's testimony because treatment records noted edema in the lower extremities on only two to three occasions in October 2018 and January 2019; between April 2018 and January 2019, there were only two episodes of leg swelling, three months apart;

---

[55] AR 820, 823.

[56] AR 791, 796, 889–95.

[57] AR 543.

[58] *Id.*

DISPOSITIVE ORDER - 18

when he reported leg swelling in October 2018, he reported he had never had leg swelling before; the record showed poor compliance with his blood pressure medication; when he was instructed to elevate his legs for swelling, he was also cleared to work; between February 2019 and January 2024, Plaintiff complained of leg swelling only once; the record contained no evidence of treatment with a cardiovascular specialist or other medical professional for congestive heart failure; his congestive heart failure diagnosis was not based on medical studies; he had normal cardiovascular physical exam findings and chest x-rays; he had no inpatient hospitalization for congestive heart failure; at "the hearing in August 2021, the claimant's attorney asked him about leg swelling, but the claimant testified only about neuropathy and tingling, with no testimony about swelling"; and Plaintiff had "overall normal functioning with activities of daily living (including working on motorcycles, doing yard work, and taking daily walks)."[59]

---

[59] AR 543–44.

DISPOSITIVE ORDER - 19

4.    Analysis

The ALJ's rationale lacks the power to convince. The ALJ's reasoning references uncontroverted proof of leg swelling and instructions to Plaintiff from medical providers to elevate his legs, which is consistent with Plaintiff's testimony at both hearings. Substantial evidence does not support the ALJ's several reasons for discounting this evidence.

First, neither the frequency of Plaintiff's complaints in 2018 and 2019 nor the fact that Plaintiff had not complained before 2018 contradicts that the medical records from that period are consistent with Plaintiff's testimony of leg swelling relieved by elevating his legs as instructed by medical providers. The rationale that Plaintiff was cleared to work by the jail medical staff is insufficient because no records describe the work, Plaintiff testified that he ultimately was unable to work because of his leg swelling, and medical records confirmed leg swelling well after that period of incarceration.[60] And the ALJ's description of an "August 2021" hearing is refuted by Plaintiff's

---

[60] AR 817, 820, 823.

DISPOSITIVE ORDER - 20

testimony at both hearings during which he described his leg swelling in detail.[61]

Additionally, the normal physical exam findings and lack of diagnostic evidence of an underlying cardiovascular condition are not substantial evidence. An ALJ may discount subjective complaints that are inconsistent with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[62] The ALJ must consider the basis for the limitations and not discount testimony about Plaintiff's limitations because of nonrelevant normal findings.[63] And a claimant's course of treatment, including an inadequately explained failure to seek or comply with treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[64]

---

[61] AR 40–51, 562–65.

[62] *Smartt*, 53 F.4th at 498.

[63] *See Ghanim*, 763 F.3d at 1164.

[64] 20 C.F.R. § 416.929(c)(3).

DISPOSITIVE ORDER - 21

Here, the ALJ did not rely on any medical opinion or consultative examination report provided after 2019 to discount the medical evidence in 2021 of leg swelling consistent with Plaintiff's testimony.[65] The ALJ correctly stated that the emergency room records from 2020 to 2024 showed no treatment with a cardiovascular specialist or diagnostic evidence of an underlying heart condition, but the ALJ did not sufficiently explain why the lack of such evidence necessarily precluded Plaintiff's reported—and treatment provider directed—need to elevate his legs.[66] The ALJ did not, for example, reference medical-expert evidence about what medical findings would exist if Plaintiff experienced leg swelling upon standing or walking for extended periods of time that was alleviated by elevation. Nor did the ALJ consider whether Plaintiff elevating his legs throughout the day to successfully alleviate his symptoms explained why he did not seek more treatment after 2021. And though the ALJ considered Plaintiff's homelessness

---

[65] AR 539–43, 545–48.

[66] AR 544.

DISPOSITIVE ORDER - 22

and lack of resources when addressing the lack of treatment,[67] the fact that Plaintiff was able to visit the emergency room between 2020 and 2024 is not a convincing reason to discredit Plaintiff's testimony about symptoms that he already knew how to treat without seeking specialized care.

Finally, Plaintiff's activities of daily living are not substantial evidence inconsistent with Plaintiff's testimony. The ALJ may discount a claimant's reported disabling symptoms if he can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performing of work-related functions.[68] However, the ALJ must consider whether the nature of the activities allows for frequent breaks that would be inconsistent with maintaining a daily work schedule and also should not penalize the claimant for attempting to engage in normal life activities.[69] Here,

---

[67] *Id.*

[68] *Molina*, 674 F.3d at 1113.

[69] *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth

DISPOSITIVE ORDER - 23

Plaintiff's reported daily activities of working on motorcycles, doing yard work, and taking daily walks—all of which permit taking intermittent breaks—do not necessarily contradict an inability to stand or walk for extended periods of time before leg swelling, which the ALJ did not consider.[70]

**B.    Remand for further proceedings.**

Remand is appropriate because the ALJ's erroneous consideration of Plaintiff's testimony affected the disability determination. At the first hearing, the vocational expert testified "elevating one's legs above the heart in the workplace" is "really not tolerated."[71] At the second hearing, the vocational expert testified "[i]f an individual needs to elevate their legs 30% of the time they just are not able to participate

Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

[70] AR 544.

[71] AR 58–59.

in full-time work."[72] Therefore, crediting Plaintiff's testimony about elevating his legs would have precluded the ALJ from finding he could adjust to medium-exertional-level jobs.

For this reason, Plaintiff contends remand for an award of benefits as of his 55th birthday pursuant to Medical-Vocational Rule 202.04 is appropriate.[73] When a harmful error occurs in the administrative proceeding, remand for further administrative

---

[72] AR 581.

[73] Medical-Vocational Rule 202.04 directs a finding of "disabled" for a claimant of advanced age (55 and over) with a high school education and no work history whose maximum sustained work capability is limited to light work as a result of severe medically determinable impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Medical-Vocational Rule 202.04.

proceedings is the usual course.[74] This is because three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[75]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[76]

Here, the second and third conditions are met. The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and,

---

[74] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[75] *Garrison*, 759 F.3d at 1020.

[76] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

if his testimony is credited as true, Plaintiff would be considered disabled because the vocational expert testified that Plaintiff could not work the full-time jobs identified if he had to elevate his legs at least 30% of the workday.

But the first condition for an award of benefits is not met. Further administrative proceedings, as specified below, are necessary to update the record with evidence of Plaintiff's leg swelling because no physical consultative examination has been performed since 2018; medical records reported the existence of leg swelling in 2018, 2019, and 2021; and Plaintiff continued to testify to leg swelling at the 2024 hearing.

**C. Medical Opinions and Step-Five Analysis: The Court finds these issues moot.**

Because remand is warranted, the Court need not address Plaintiff's argument that the ALJ improperly assessed the medical opinions. Furthermore, Plaintiff's step-five arguments, beyond that the ALJ's RFC failed to consider Plaintiff's reported need to elevate his legs, are moot.

## IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. On remand, the ALJ is to arrange for a medical expert, who is qualified to opine as to what medical signs would exist upon examination if Plaintiff experienced swelling of his legs after standing and/or walking throughout the day, to conduct a consultative physical examination. If the ALJ again discounts Plaintiff's testimony based on a lack of underlying objective findings, the ALJ must rely on specific medical-expert evidence regarding which objective signs or lack thereof contradict Plaintiff's testimony. If the ALJ again discounts Plaintiff's testimony based on a lack of evidence of Plaintiff seeking treatment for leg swelling, the ALJ must consider whether it was reasonable for Plaintiff to not seek treatment based on his lack of resources and already having medical instructions on how to alleviate the swelling.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

DISPOSITIVE ORDER - 28

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of April 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 29